| Khatskevich v Victor |
|:---:|
| 2024 NY Slip Op 33909(U) |
| November 1, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 151658/2014 |
| Judge: Shlomo S. Hagler |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

| | |
|---|---|
| PRESENT: **HON. SHLOMO S. HAGLER** | PART 17 |
| *Justice* | |

-------------------------------------------------------------------X

YEVGENIYA KHATSKEVICH,

             Plaintiff,

- v -

ADAM VICTOR, TRANSGAS ENERGY SYSTEMS CORPORATION, TRANSGAS DEVELOPMENT SYSTEMS, LLC,GAS ALTERNATIVE SYSTEMS, INC.,PROJECT ORANGE ASSOCIATES, LLC,GAS ORANGE DEVELOPMENT, INC.,TRANSNATIONAL ENERGY, LLC,TRANSNATIONAL MANAGEMENT SYSTEMS, LLC,TRANSNATIONAL MANAGEMENT SYSTEMS II, LLC,MANHATTAN PLACE CONDOMINIUM, ADAM VICTOR & SON STABLE, LLC,ADAM VICTOR GRANTOR TRUST,

             Defendant.

| |
|---|
| INDEX NO. 151658/2014 |
| MOTION DATE 04/08/2024 |
| MOTION SEQ. NO. 044 |

**DECISION + ORDER ON MOTION**

-------------------------------------------------------------------X

The following e-filed documents, listed by NYSCEF document number (Motion 044) 1190, 1191, 1192, 1196, 1198, 1199

were read on this motion to/for           **REARGUMENT/RECONSIDERATION** .

    By Order, dated March 4, 2024 and entered on March 8, 2024 [NYSCEF Doc. Nos. 1181, 1182] (the "Prior Order"), this Court granted the motion by defendant Manhattan Place Condominium ("MPC") for summary judgment dismissing plaintiff's Amended Complaint as asserted against MPC in its entirety. Plaintiff now moves pursuant to CPLR § 2221 (d) for leave to reargue the Prior Order, and upon such reargument, to reverse this Court's granting of summary judgment dismissing the Amended Complaint as against MPC.[1] Specifically, plaintiff moves to reargue that portion of the Prior Order which granted MPC's motion for summary

---

[1] Plaintiff filed a Notice of Appeal of the Prior Order to the First Department (NYSCEF Doc. No. 1194) on April 26, 2024.

**151658/2014 KHATSKEVICH, YEVGENIYA vs. VICTOR, ADAM**         **Page 1 of 18**
**Motion No. 044**

judgment dismissing plaintiff's claims alleged under the New York City Human Rights Law ("NYCHRL") and under common law. Plaintiff argues that this Court overlooked facts and misapprehended the law with respect to dismissing the action as against MPC grounded in violations of the NYCHRL; specifically, this Court's dismissal of the fifth cause of action for sexual harassment, seventh cause of action for aiding and abetting sexual harassment, ninth cause of action for retaliation and tenth cause of action for aiding and abetting retaliation.

In addition, plaintiff seeks reargument of this Court's dismissal of plaintiff's common law claims (assault and battery [first and second causes of action]), and causes of action asserted under penal laws (unlawful surveillance under NY Penal Law [twelfth, thirteenth and fourteenth causes of action], unlawful capturing of images pursuant to Nevada criminal law [fifteenth cause of action] and unlawful sexual abuse pursuant to Kentucky criminal law [sixteenth cause of action]) as asserted against MPC.[2]

## BACKGROUND FACTS AND ALLEGATIONS

Plaintiff Yevgeniya Khatskevich commenced this action against defendant Adam Victor ("Victor"), MPC and various entities allegedly controlled by Victor (the "Victor Entities") for assault (first cause of action), battery (second cause of action), intentional infliction of emotional distress (third cause of action), breach of contract (fourth cause of action), sexual harassment pursuant to the NYCHRL (fifth cause of action), immigration status discrimination pursuant to the NYCHRL (sixth cause of action), aiding and abetting sexual harassment pursuant to the NYCHRL (seventh cause of action), aiding and abetting immigration status discrimination pursuant to the NYCHRL (eighth cause of action), retaliation pursuant to the NYCHRL (ninth

---

[2] Plaintiff has not sought to reargue this Court's dismissal of the fourth cause of action for breach of contract as against MPC.

**151658/2014 KHATSKEVICH, YEVGENIYA vs. VICTOR, ADAM**
**Motion No. 044**

Page 2 of 18

cause of action), aiding and abetting retaliation pursuant to the NYCHRL (tenth cause of action), discriminatory harassment pursuant to the NYCHRL (eleventh cause of action), unlawful surveillance pursuant to the NY Penal Law (twelfth, thirteenth and fourteenth causes of action), unlawful capturing of images pursuant to Nevada criminal law (fifteenth cause of action), unlawful sexual abuse pursuant to Kentucky criminal law (sixteenth cause of action) and piercing the corporate veil (seventeenth cause of action).[3]

Plaintiff alleges she was employed by defendant Victor as his personal or administrative assistant from approximately December 2012 until October 2013.[4] Plaintiff alleges she was subjected to numerous acts of sexual assault and indignity, which intimidated and humiliated her in the workplace and in her daily life (NYSCEF Doc. No. 409 [Amended Complaint]). Reference can be made to the Prior Order for a full recitation of the facts (NYSCEF Doc. No. 1181).

*Plaintiff's contentions on reargument*

With respect to MPC's liability for Victor's actions, plaintiff argues that this Court overlooked facts and misapprehended the law supporting plaintiff's claim that Victor, as President of the Board of Managers of MPC, was MPC's agent given that he exercised managerial control. As such, plaintiff argues that MPC is strictly liable under the NYCHRL for Victor's alleged sexual harassment of plaintiff based on imputing Victor's acts to MPC. Plaintiff also argues that she was an independent contractor of MPC who worked in furtherance of MPC's business. Plaintiff argues further that her causes of action for retaliation and aiding and abetting

---

[3] All causes of action are asserted against MPC except for the eleventh cause of action for discriminatory harassment (asserted against defendant Adam Victor only). In prior proceedings, this Court dismissed plaintiff's third cause of action for intentional infliction of emotional distress and seventeenth cause of action for piercing the corporate veil against all defendants (*see* tr oral argument [NYSCEF Doc. No. 1169] at 30).

[4] Plaintiff testified at her deposition on October 11, 2018, that the last date she worked for Victor was October 18, 2013 (NYSCEF Doc. No. 1094 [Plaintiff deposition] at 23).

**151658/2014 KHATSKEVICH, YEVGENIYA vs. VICTOR, ADAM**
**Motion No. 044**

**Page 3 of 18**

[* 3]

3 of 18

retaliation can be sustained even assuming plaintiff is not an employee of MPC. In addition, plaintiff maintains that plaintiff's common law claims against MPC survive premised on the apparent authority doctrine. Finally, plaintiff argues that plaintiff can support claims against MPC in this civil matter arising out of alleged violations of criminal statutes based on an implied private right of action.

## MOTION TO REARGUE

Under CPLR 2221(d)(2) "motions for reargument are addressed to the sound discretion of the court which decided the prior motion and may be granted upon a showing that the court overlooked or misapprehended the facts or law or for some other reason mistakenly arrived at its earlier decision" (*Cuomo v. Ferran*, 77 AD3d 698, 700 [2d Dept 2010] [internal quotation marks and citations omitted]). Plaintiff argues that both the controlling law and the evidence in the record are contrary to this Court's order granting summary judgment dismissing the Amended Complaint as to defendant MPC.

## DISCUSSION

*The New York City Human Rights Law*

The NYCHRL provides that "[t]he provisions of this title shall be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York state civil and human rights laws, including those laws with provisions worded comparably to provisions of this title, have so been construed" (Administrative Code § 8–130 [a]; Local Law No. 85 [2005] of City of N.Y. § 7). Under the Local Civil Rights Restoration Act of 2005, "[i]nterpretations of New York state or federal statutes with similar wording may be used to aid in interpretation of the [NYCHRL] … as a floor below which the City's Human Rights law cannot fall, rather than a ceiling above which the local law cannot rise"

**151658/2014 KHATSKEVICH, YEVGENIYA vs. VICTOR, ADAM**
Motion No. 044

**Page 4 of 18**

(Local Law No. 85 [2005] of City of N.Y. § 1; *Doe v. Bloomberg, L.P.*, 36 NY3d 450, 462 [2021]).

Furthermore, "the City's Human Rights Law [must be construed broadly] in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible" (*Albunio v. City of New York*, 16 NY3d 472, 477– 478 [2011]). NYCHRL imposes liability on an employer for the discriminatory conduct of an employee or agent as follows:

> "An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent …only where:
>
> (1) The employee or agent exercised managerial or supervisory authority; or
> (2) The employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or
> (3) The employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct" (Administrative Code § 8-107 [13] [b]).

In turn, an employer is defined as follows:

> "[T]he term 'employer' does not include any employer that has fewer than four persons in the employ of such employer at all times during the period beginning twelve months before the start of an unlawful discriminatory practice and continuing through the end of such unlawful discriminatory practice …For purposes of this definition, (i) natural persons working as independent contractors in furtherance of an employer's business enterprise shall be counted as persons in the employ of such employer and (ii) the employer's parent, spouse, domestic partner or child if employed by the employer are included in the employ of such employer" (Administrative Code § 8-102)."

The NYCHRL provides that employers are subject to strict liability for the discriminatory acts of managers or supervisors (*Zakrzewska v New School*, 14 NY3d 469, 481 [2010]; *Melendez v New York City Tr. Auth.*, 204 AD3d 542, 542–43 [2022] [citing *Cajamarca v Regal Entertainment Group*, 2013 NY Slip Op 32615(U) [Sup Ct, NY County 2013]). The NYCHRL

**151658/2014 KHATSKEVICH, YEVGENIYA vs. VICTOR, ADAM**
**Motion No. 044**

Page 5 of 18

5 of 18

establishes that it is unlawful discrimination for "an employer or an employee or agent thereof, because of the actual or perceived . . . gender . . . or immigration or citizenship status of any person . . . (3) To discriminate against such person in compensation or in terms, conditions or privileges of employment" (Administrative Code § 8-107 [1] [a] [3]).

"[U]nlike any provision in the State HRL [NYCHRL § 8-107[13] [b] [1]], is a vicarious liability provision which imposes strict liability on an employer--the employer need not have 'participated' in the offending conduct" (*Doe v Bloomberg, L.P.*, 36 NY3d at 456, citing *Zakrzewska v New School*, 14 NY3d at 480-481).

Plaintiff's claims against MPC are based on her status as an employee or independent contractor of MPC, or alternatively, based on Victor's role as an agent of MPC.

Plaintiff as employee of MPC

The record is bereft of evidence to raise an issue of fact as to whether plaintiff was an employee of MPC. Victor testified that "Eve [plaintiff] ... certainly was not [an employee of MPC] – [she] did not have a visa that allowed her to work until October 1st, and then only for Transgas Energy Systems" (NYSCEF Doc. No. 1102 [Victor deposition at 556). Victor also testified that "none of my employees would be working for MPC" (*id.* at 607) and specifically with respect to plaintiff, testified as follows:

> "Q. Did Ms. Khatskevich do work for MPC in the period following Hurricane Sandy as
> directed by you?
> A. I don't recall any work that she did.
> Q. None?
> A. I cannot recall anything right no" (*id.* at 610).

Plaintiff's vague testimony that she thought she was an employee of MPC based on what Victor told her (NYSCEF Doc. No. 1100 [Plaintiff deposition] at 239-241, 278-279, 303-302) is

**151658/2014 KHATSKEVICH, YEVGENIYA vs. VICTOR, ADAM**
**Motion No. 044**

Page 6 of 18

6 of 18

belied by plaintiff's testimony that (1) plaintiff knew that Victor was her employer and took direction as to her work directly from him; (2) plaintiff never received direction regarding her work from any MPC Board member; (3) plaintiff did not participate in any decision making process at the board meetings; (4) plaintiff communicated with a Board member at only one meeting; (5) nobody from MPC ever told plaintiff that she was employed by MPC; (6) plaintiff did not know if someone from the MPC Board or management ever reviewed her work; (7) plaintiff failed to advise any MPC Board member or MPC management that she had quit; and (8) plaintiff neither received any employment benefits from MPC nor was aware that employees of MPC were members of a labor union (*id.* at 239-241, 249, 253, 293-296, 300-304). Plaintiff clearly testified that "I know Adam Victor was the employer and I would work per his direction" (*id.* at 239-241).

In any event, plaintiff does not for the most part rely on plaintiff's status as a direct employee of MPC in support of her motion to reargue. Rather, plaintiff argues that Victor is an agent of MPC sufficient to impute liability to MPC for Victor's acts as against plaintiff, or alternatively, that plaintiff is an independent contractor of MPC.

Victor as Agent of MPC

Even if plaintiff is not a direct employee of MPC, plaintiff argues that this Court overlooked the extent to which Victor "was an agent of MPC" who exercised managerial responsibility at the time of Victor's alleged discrimination (NYSCEF Doc. No. 1192 [Plaintiff's MOL in support] at 2, 7-8). Plaintiff maintains that, as such, MPC would be strictly liable under the NYCHRL for Victor's discriminatory acts (*id.*, citing *Zakrzewska v New School.*, 14 NY3d at 480-81 [2010]).

**151658/2014 KHATSKEVICH, YEVGENIYA vs. VICTOR, ADAM**
**Motion No. 044**

**Page 7 of 18**

Upon reconsideration, this Court determines that the record reveals an issue of fact as to whether Victor's could be considered an agent of MPC such that his alleged acts of sexual assault against plaintiff would be imputed to MPC under the NYCHRL

The deposition testimony and affidavits reveal that Victor, as President of the Board of MPC dominated MPC. Walter Brindak, as a member of the Board of MPC, testified, that Victor would dictate the agenda at Board meetings, was the only person who had input into preparing the Board meeting minutes and that Michael Rothschild ("Rothschild") [owner of the managing agent, AJ Clarke Real Estate ("AJ Clarke')] "was more Victor's assistant than the managing agent" (NYSCEF Doc. No. 1153 [Brindak deposition] at 16-17, 22). Brindak also testified that Victor signed checks for under $5,000 and signed checks for over $5,000 which needed two signatures; one of them being Victor's (building expenses over $5,000 needed approval of the Board) (*id.* at 43, 46).[5] Brindak testified that Victor chose AJ Clarke as the managing agent of MPC which was approved by the Board but without vetting (id. at 23-25).[6] When answering questions at his deposition about the processing of building expenses and invoices from Victor Entities, Rothschild testified as follows:

"A. There were a lot of things that struck me as odd at this building.

---

[5] Rothschild testified that he could sign checks for under $5,000 for expenses in the ordinary course of business as managing agent on behalf of MPC but that checks for building related work of less than $5,000 would need Greg's [Greg Do Jong, resident manager] approval. Rothschild testified that Victor would generally not approve bills of that amount for building related expenses except with respect to "Heinrich" because "that was somebody that effectively Adam hired, for lack of a better word, I can't be certain, but my guess would be that Adam would submit and say the bill's approved to be paid" (NYSCEF Doc. No. 1099 [Rothschild deposition] at 52-53). Rothschild testified that Heinrich Kirschner ("Kirschner") was hired by Victor after Superstorm Sandy to assist with flood mitigation (*id.* at 48-54). Rothschild also testified that he believed that prior to working at MPC, Kirschner "helped [Victor] with [Victor's] power plant in upstate New York. [Kirschner] worked with [Victor] there" (*id.* at 53).
[6] In an affidavit, sworn to on August 17, 2020, submitted in connection with another matter entitled *Board of Managers of The Manhattan Place Condominium v Adam Victor* (Index No. 150621/2020), Amos Tamam ("Tamam"), President of the Board of Managers of MPC at that time, attested that "[Victor] served as President of the Board of Managers of the Condominium for more than twenty years, until he was voted out of office in 2019. During his tenure as President, [Victor] dominated the Board of Managers and used it to benefit himself personally" (Index No. 150621/20; NYSCEF Doc. No. 11 [Tamam Affidavit] at ¶ 8).

**151658/2014 KHATSKEVICH, YEVGENIYA vs. VICTOR, ADAM**
**Motion No. 044**

**Page 8 of 18**

[* 8]

8 of 18

Q. Oh yeah? What were they?
A. It was just the nature of the building, where the board president exerted more authority than is typically so. I'll say that.
Q. Did Adam Victor, the board president, basically run the show there?
A. I think that's a little bit of a strong statement, but he certainly exerted more authority than a typical board president" (NYSCEF Doc. No. 1099 [Rothschild deposition] at 144).

In addition, Rothschild testified that Victor would often recommend contractors for MPC to use for the Hurricane Sandy renovation, such as Parsons, an electrical contractor and Len Shapiro ("Shapiro"), the consultant who managed the consultants (*id.* at 78-80, 91 [Parsons]; *id.* at 96, 99, 105 [Shapiro]). MPC also reimbursed the travel, accommodation and meal expenses for Victor's staff and consultants whom Victor recommended to the Board to work on the Superstorm Sandy renovations (e.g., *id.* at 150, 165 [car service for Shapiro and Victor's staff]; *id.* at 154-155 [dinner for Victor and Shapiro]; *id.* at 162-163 [lunch for Shapiro and Victor]. Rothschild testified regarding the invoices submitted by Victor for various meals, printing supplies and for expenses related to the renovation of MPC following Superstorm Sandy. In addition, Rothschild testified regarding a certain invoice submitted by Victor to MPC for $1,400 for car services for Shapiro and Victor's staff as follows:

"Q. Is this another instance where you did not believe that Mr. Victor was actually sending you charges for car services but for other things?
A. It seemed like a lot of money for car service. So I didn't-to myself I didn't think that was—yeah. I did not think it was just for car services.
Q. Did this strike you as maybe this was a board member trying to rip off the condo?
A. I think that Adam, during this period of time, Adam and maybe people who worked for him spent a lot of time working on behalf of the condo, so I wouldn't constitute it as a rip-off. But I think I said before, that it was extremely unusual for board members to basically reimburse their companies, or ask for payment for their companies, and, um, this is the only building I've seen that done. So—but again, Adam was the president. He was telling us to write this check. I didn't try to judge whether – what the value or, you know how much work he had done.
Q. When he told you to write a check as long as it was under the 5 grand amount it get [sic] written, right?
A. Yeah, during this period of time at least. Yes." (*id.* at 165-167).

**151658/2014 KHATSKEVICH, YEVGENIYA vs. VICTOR, ADAM**
Motion No. 044

Page 9 of 18

[* 9]

9 of 18

Rothschild testified that at times he approved Victor's reimbursement requests even though Rothschild did not believe the charges were truly for car services because "it was based on the direction of the board president" (*id.* at 152-153).

Rothschild also testified that there were other expenses for which Victor sought reimbursement from MPC such as Victor's staff overtime and printing expenses for working on MPC matters (*id.* at 141, 143, 163, 167-168 (invoices from Gas Alternative Service [a Victor Entity] covering employee overtime and printing supplies for lobby and construction projects).[7] Rothschild also stated that he hardly ever asked Victor for back-up for the invoices (*id.* at 165).

With respect to Victor's managerial or supervisory authority, plaintiff claims that "during the period from February 2013 until October 2013, I estimate that I spent approximately 50% or more of my time working for MPC" (NYSCEF Doc. No. 1132 [Plaintiff's Affidavit] at ¶ 45). Plaintiff testified that Victor, as the president of the board of managers at MPC, informed plaintiff she was an employee of MPC at the time (NYSCEF Doc. No. 1100 [Plaintiff deposition] at 278 -279). Although Victor testified that plaintiff was not an employee of MPC (NYSCEF Doc. No. 1102 [Victor deposition] at 556), and plaintiff gave conflicting testimony as to whether she was an employee of MPC or of Victor, at the very least, there is evidence that plaintiff worked at the direction of Victor (NYSCEF Doc. No. 1100 [Plaintiff deposition] at 241).

Plaintiff testified that she attended board meetings of MPC where her duties were to print things for the meetings "deliver[] drinks, like coffee, water" (*id.* at 242). Plaintiff testified:

> "Q. And at those meetings regarding the lobby renovation, what role did you have at those meetings?
> A. I was a coordinator, I would be, you know, putting together general items, I would be coordinating, ordering the car for Mr. Victor, sometimes Marta, who was a designer,

---

[7] For a "limited period of time", Rothschild testified that MPC was reimbursing Victor $2,100 every month for services and printing supplies related to his employee overtime for the MPC lobby renovation project (*id.* at 168).

**151658/2014 KHATSKEVICH, YEVGENIYA vs. VICTOR, ADAM**
**Motion No. 044**

**Page 10 of 18**

10 of 18

would be with us. I was assigned to help her whenever she needed help in the office in Manhattan Place Condominium. There were weekly meetings with general coordination to determine the availability of all the parties involved in the project. I would e-mail the contractors and the project management company to determine where they could meet with Adam Victor or other people who were present on the project" (*id.* at 243-244).[8]

When asked whether plaintiff was performing these tasks on behalf of Victor or on behalf of MPC, plaintiff replied "both." Plaintiff stated that her understanding that she worked for "both" was based on Victor's own explanation to her that plaintiff worked for MPC which is "how he referred to it" (*id.* at 244). In her Affidavit, plaintiff averred that Victor showed her a check from MPC in the amount of between "four to $6000" for the hours she worked for MPC but that Victor told her that she would not receive the money as Victor was planning to use the money to pay an attorney for the work necessary to file plaintiff's H1-B visa application (NYSCEF Doc. No. 1132 [Plaintiff Affidavit] at ¶ 46).[9]

In addition, Victor testified that if his staff stayed overtime to, for example, print posters for MPC, he would charge MPC for that expense. Victor testified "[a]nd so these people, my staff is spending time doing a lot of graphics work on behalf of MPC, and I'm not going to pay for that, MPC had to pay for that" (NYSCEF Doc. No. 1102 [Victor deposition] at 608).

Plaintiff as Independent Contractor of MPC

Alternatively, plaintiff contends that this Court misapplied the definition of employee and that "because [plaintiff] is a 'natural person' and an 'independent contractor' who performed work in furtherance of MPC's business enterprise, she qualifies as MPC's employee for purposes of her NYCHRL claims against MPC" (NYSCEF Doc. No. 1192 [Plaintiff's MOL in support] at

---

[8] In opposition to MPC's motion for summary judgment, plaintiff submitted an email from plaintiff to a representative of a lighting company who was contacted in connection with the MPC lobby renovation project. In that email, plaintiff states "I'm the assistant to Adam Victor, the President of TransGas and President of the building [MPC] as well" (NYSCEF Doc. No. 1138 at 2).
[9] Plaintiff testified at her deposition however that she did not see a copy of the check and that Victor only had the check "in his hands, folded it, and put it in his pocket" (NYSCEF Doc. No. 1100 [Plaintiff deposition] at 264–65).

[* 11]                                    11 of 18

5). As such, even if not an employee of MPC, assuming plaintiff is an independent contractor of MPC, she would be a person "in the employ" of MPC for purposes of the NYCHRL (Administrative Code § 8-102).[10]

*Cause of Action for Sexual Harassment under the NYCHRL (fifth cause of action)*

Under the NYCHRL, an employer is liable for the unlawful discriminatory practice based upon the conduct of an agent when the agent exercised managerial or supervisory responsibility (Administrative Code § 8-107 [13] [b]; *see*; *Melendez v New York City Tr. Auth.*, 204 AD3d 542 [1st Dept 2022]); *see also Russell v New York University*, 2024 WL 1773218 [2024].

Based on the foregoing, and upon a review of the record in its entirety, this Court now determines that the record sufficiently demonstrates that there is at a minimum an issue of fact as to whether Victor can be considered an agent of MPC with managerial or supervisory responsibility so as to impute Victor's alleged acts of sexual harassment to MPC (*see* Administrative Code § 8-107 [13] [b] [1]). The deposition testimony of plaintiff, Victor, Brindak and Rothschild reflect that Victor dominated the Board, which creates an issue of fact as to whether MPC would be strictly liable for Victor's alleged violations of the NYCHRL (Administrative Code § 8-107 [13]). "The record does not demonstrate conclusively no basis upon which to impute liability to [MPC] for [Victor's] conduct" (*Melendez v New York City Tr. Auth.*, 204 AD3d 542, 542 [1st Dept 2022]. "Although [Victor] did not have the authority to hire or fire employees and his official role was nonsupervisory, there is evidence that he had the de facto ability to direct other employees, notwithstanding his official title" (*id.* at 543); *see Russell v New York*

---

[10] In the Prior Order, this Court stated that there is no evidence demonstrating that plaintiff was an employee or independent contractor of MPC, and that plaintiff's testimony was often vague, conclusory and contradictory NYSCEF Doc. No. 1181 [Prior Order] at 15).

*University*, 2024 WL 1773218 at *6 [an agency or supervisory capacity is construed liberally "to include not just those with formal managerial or titular authority over a plaintiff, but as applicable to those who wield any ability to dictate or administer the compensation, terms, conditions, or privileges of the plaintiff's employment"]. Here, although Victor lacked the official, actual, authority to hire or fire employees at MPC, given evidence that Victor dominated MPC and acted with greater authority than MPC's by-laws might suggest, there is an issue of fact as to whether there is a sufficient basis to consider Victor an agent of MPC with supervisory or managerial authority over plaintiff sufficient to impute liability to MPC for Victor's alleged acts of sexual harassment against plaintiff.

However, plaintiff has failed to meet her burden to demonstrate that this Court either overlooked or misapprehended matters of fact or law in the Prior Order to the extent plaintiff's claims for sexual harassment under the NYCHRL are based on plaintiff's alleged status as an independent contractor. In fact, plaintiff never alleged that she was an independent contractor in the Complaint or Amended Complaint. Moreover, at no time did plaintiff, Victor, Brindak of MPC or Rothschild of PJ Clarke testify at their depositions that plaintiff was an independent contractor of MPC. Other than as argued in counsel's Memoranda of Law in opposition to MPC's motion for summary judgment (Motion Seq. No. 40), in support of plaintiff's motion to reargue (Motion Seq. No. 44) and at oral argument on the motion to reargue, there is no evidence in the record whatsoever that plaintiff was an independent contractor of MPC.

There is also no evidence in the record to support an aiding and abetting sexual harassment claim as against MPC (seventh cause of action). Having found that there is an issue of fact as to whether MPC is liable for the acts of sexual harassment toward plaintiff by its

**151658/2014 KHATSKEVICH, YEVGENIYA vs. VICTOR, ADAM**
Motion No. 044

Page 13 of 18

13 of 18

alleged agent Victor, MPC cannot aid and abet itself. Moreover, there is no allegation in the record that any individual aided and abetted Victor's alleged sexual harassment of plaintiff. As such, plaintiff's cause of action for aiding and abetting sexual harassment as against MPC cannot lie given that MPC's liability, if any, would be derived from imputing Victor's acts to MPC as an agent of MPC.

*Immigration Status Discrimination and Aiding and Abetting same (sixth and eighth causes of action)*

With respect to immigration status discrimination and aiding and abetting same (sixth and eighth causes of action), there is no basis to disturb this Court's grant of summary judgment dismissing these claims as to MPC. In fact, in neither plaintiff's opposition to MPC's motion for summary judgment nor in support of plaintiff's motion to reargue, does plaintiff provide arguments supporting such claims.

Based on the foregoing, plaintiff's motion to reargue is granted to the extent of vacating the Court's grant of summary judgment dismissing plaintiff's fifth cause of action for sexual harassment in the Amended Complaint as against MPC as follows: plaintiff's fifth cause of action is reinstated to the extent of finding an issue of fact as to plaintiff's claims against MPC for sexual harassment based on allegations that Victor was an agent of MPC, and that, as such, liability may be imputed to MPC for Victor's alleged acts of sexual harassment under the NYCHRL (Administrative Code § 8-107 [13] [b]).

*Causes of Action for Retaliation and Aiding and Abetting Retaliation under the NYCHRL (Ninth and Tenth Causes of Action)*

"To make out an unlawful retaliation claim under the NYCHRL, a plaintiff must show that (1) he or she engaged in a protected activity as that term is defined under the NYCHRL, (2) his or her employer was aware that he or she participated in such activity, (3) his or her employer

**151658/2014 KHATSKEVICH, YEVGENIYA vs. VICTOR, ADAM**
**Motion No. 044**

**Page 14 of 18**

14 of 18

[* 14]

engaged in conduct which was reasonably likely to deter a person from engaging in that protected activity, and (4) there is a causal connection between the protected activity and the alleged retaliatory conduct" (*Bilitch v New York City Health & Hosps. Corp.*, 194 AD3d 999, 1004 [1st Dept 2021] [internal quotations and citations omitted]). Under the NYCHRL (Administrative Code § 8-107 [7]) plaintiff "need not establish that the alleged retaliation ... result[ed] in an ultimate action with respect to employment ... or in a materially adverse change in the terms and conditions of employment so long as the retaliatory ... act ... [was] reasonably likely to deter a person from engaging in protected activity" (*Brightman v Prison Health Serv., Inc.*, 108 AD3d 739, 739 [2d Dept 2013] *quoting* NYCHRL [Administrative Code § 8-107 [7] [internal quotations omitted]).

Upon reargument, plaintiff contends plaintiff does not need to be an "employee" to maintain a cause of action for retaliation under NYCHRL, Administrative Code § 8-107 [7]. However, at oral argument on the within motion, plaintiff's counsel conceded that he was unable to find case authority supporting a retaliation claim by a party who is not an employee (NYSCEF Doc. No. 1200 [tr oral argument, 6/6/24] at 9). As such, upon reargument, plaintiff's motion is denied to the extent plaintiff seeks to reargue the dismissal of the ninth cause of action for retaliation and the tenth cause of action for aiding and abetting retaliation.

*Causes of Action for Assault and Battery (First and Second Causes of Action)*

The causes of action for assault and battery relate to Victor's alleged touching of plaintiff and Victor's other lewd and offensive behavior occurring at MPC, and during trips to Las Vegas, and Kentucky. As to MPC (and the Victor Entity defendants), plaintiff alleges that "defendant Victor's tortious conduct ... was undertaken during and within the scope of his employment by the Entity Defendants" (NYSCEF Doc. No. 409 [Amended Complaint] at ¶¶ 176, 182).

**151658/2014  KHATSKEVICH, YEVGENIYA vs. VICTOR, ADAM**                    **Page 15 of 18**
**Motion No. 044**

15 of 18

In the Prior Order, this Court determined that even if there was evidence demonstrating that Victor was an employee of MPC, all the acts underlying plaintiff's claims for assault and battery, would not be within the scope of any employment with MPC. "Under the doctrine of respondeat superior, an employer may be vicariously liable for the tortious acts of its employees only if those acts were committed in furtherance of the employer's business and within the scope of employment" (*Doe v Guthrie Clinic, Ltd.*, 22 NY3d 480, 484 [2014] [internal quotations and citations omitted]).

Plaintiff contends that this Court overlooked plaintiff's argument that MPC could be liable for Victor's common law torts under a theory of apparent authority. Plaintiff's argument is unavailing. "Liability premised on apparent authority, usually raised in a business or contractual dispute context, arises where a third party reasonably relies on the misrepresentation of an agent's authority through conduct of the principal" (*N.X. v Cabrini Med. Ctr.*, 97 NY2d 247 n 3 [2002]).[11]

*Causes of Action for Unlawful Surveillance pursuant to New York Penal Law, Unlawful Capturing of Images pursuant to Nevada law and Sexual Abuse in violation of Kentucky law (Twelfth, Thirteenth, Fourteenth, Fifteenth and Sixteenth Causes of Action)*

All these causes of action as against MPC are premised on vicarious liability, and in any event are not properly before this Court. The causes of action for surveillance allege violations of the New York Penal Law and the causes of action for unlawful capturing of images and sexual

---

[11] "'Essential to the creation of apparent authority are words or conduct of the principal, communicated to a third party, that give rise to the appearance and belief that the agent possesses authority to enter into a transaction. The agent cannot by [his] own acts imbue [himself] with apparent authority. Rather, the existence of apparent authority depends upon a factual showing that the third party relied upon the misrepresentation of the agent because of some misleading conduct on the part of the principal—not the agent. Moreover, a third party with whom the agent deals may rely on an appearance of authority only to the extent that such reliance is reasonable" (*Lisi v New York Ctr. for Rehabilitation & Nursing*, 225 AD3d 590, 591 [2d Dept 2024] quoting *Hallock v State of New York*, 64 NY2d 224, 231 [1984]). The apparent authority doctrine has no applicability to plaintiff's common law causes of action for assault and battery in the current matter given there is no evidence that MPC engaged in any misleading conduct.

**151658/2014  KHATSKEVICH, YEVGENIYA vs. VICTOR, ADAM**                    **Page 16 of 18**
**Motion No. 044**

abuse are premised on Nevada and Kentucky penal statutes, respectively, and are based upon alleged crimes committed out-of-state.

These claims relate to allegations that Victor illegally recorded videos of plaintiff showering and undressing, among other things, for his own gratification. As with the intentional torts, there is no evidence in the record that Victor was an employee of MPC, and even if he was, the facts underlying the allegations of violating the criminal statutes clearly falls outside of any scope of employment.[12] Plaintiff's contention upon reargument that there may be an implied private right of action based on these criminal statutes is unavailing (*see Minnelli v Soumayah*, 41 AD3d 388, 389 [1st Dept 2007], *lv dismissed* 9 NY3d 1028 [2008] ["[t]he first cause of action for extortion and attempted extortion…are criminal offenses that do not imply a private right of action"]).[13] In any event, plaintiff presents no arguments as to how the particular criminal statutes alleged to be violated create an implied private cause of action in the instant matter (*see Niagara Mohawk Power Corp. v Testone*, 272 AD2d 910, 911 [4th Dept 2000] ["plaintiff cites no statute or case law providing for such cause of action [for extortion]").

---

[12] Plaintiff testified that during the various trips she took with Victor, work was done in furtherance of the Victor Entities or Victor himself, not MPC (NYSCEF Doc. No. 1100 [Plaintiff deposition] at 259-261).

[13] Plaintiff cites a Third Department case which denied a motion to dismiss a cause of action against individual fraternity members under CPLR 3211 premised on an anti-hazing criminal statute. The court held that "the first two prerequisites for the recognition of an implied cause of action are plainly satisfied; decedent is undeniably one for whose benefit the criminal statute was enacted, and allowance of a private right of action will clearly further the legislative purposes of deterring potentially dangerous hazing activities. And with respect to the third prong, we are not persuaded that the existence of laws governing the imposition of civil liability in connection with the furnishing of alcoholic beverages inhibits recognition of a private cause of action based on the anti-hazing statute, particularly where, as here, the acts decried go beyond just supplying the alcoholic beverages (*Oja v Grand Ch. of Theta Chi Fraternity*, 257 AD2d 924, 925 [3d Dept 1999] [internal citations omitted]). That case applies to an entirely different criminal statute than alleged herein.

151658/2014   KHATSKEVICH, YEVGENIYA vs. VICTOR, ADAM
Motion No. 044

Page 17 of 18

[* 17]

17 of 18

## CONCLUSION

Based on the foregoing, it is

ORDERED, that plaintiff's motion to reargue the Decision & Order of this Court, dated March 4, 2024 (NYSCEF Doc. No. 1181) (the "Prior Order") is granted only to the extent of vacating the granting of summary judgment to MPC dismissing the fifth cause of action for sexual harassment in violation of the NYCHRL as against MPC, and such cause of action is reinstated as against MPC; and it is further

ORDERED, that plaintiff's motion to reargue the Prior Order is otherwise denied.

November 1, 2024
_____
DATE

_____
SHLOMO S. HAGLER, J.S.C.

| CHECK ONE: | ☐ CASE DISPOSED | ☒ NON-FINAL DISPOSITION | |
|---|---|---|---|
| | ☐ GRANTED  ☐ DENIED | ☒ GRANTED IN PART | ☐ OTHER |
| APPLICATION: | ☐ SETTLE ORDER | ☐ SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | ☐ INCLUDES TRANSFER/REASSIGN | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |

**151658/2014   KHATSKEVICH, YEVGENIYA vs. VICTOR, ADAM**
Motion No. 044

**Page 18 of 18**

18 of 18